TERESA M. DONNELLY, as Ancillary Executrix of FRANK DONNELLY, Deceased, Appellant, v. H. C. & A. I. PIERCY CONTRACTING COMPANY, Respondent.

**Negligence — contributory negligence — action for death of plaintiff's intestate injured while trying to rescue defendant's horse, left untied by driver, and frightened by railroad train — proximate cause of injury and contributory negligence of plaintiff's intestate questions for the jury.**

The driver of defendant left his horse alone and untied in a gangway leading directly to a passenger platform of a railroad company under circumstances that would justify a jury in characterizing the act of the driver as negligent. Sometime later the horse, still untied, was discovered standing at one corner of this platform. He was restless, and starting forward slipped and fell. Plaintiff's intestate, who had charge of the station, and a fellow-employee raised the horse, quieted him, stood him again ir a corner and returned to their work, leaving the horse untied as before. A few minutes later, frightened by an incoming train, the horse started forward, plunged, reared and again fell. In attempting to relieve the horse and protect incoming passengers from possible danger, the deceased received fatal injuries. *Held*, that it was a question for a jury whether the defendant's negligence was the proximate cause of the injury, and also whether plaintiff's intestate was guilty of contributory negligence.

Donnelly v. *Piercy Contracting Co.*, 169 App. Div. 929, reversed,

(Argued December 20, 1917; decided January 8, 1918.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered August 27, 1915, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Theodore B. Chancellor* for appellant. The question of defendant's negligence was one of fact which should have been submitted to the jury. The proximate cause of the accident was the act of the driver in leaving the horse unhitched and unattended at a place from which it was possible and easy for the horse to wander, and from which place it did wander to the train concourse. (*Williams* v. *Koehler & Co.*, 41 App. Div. 426; *Koonz* v. *N. Y. Mail Co.*, 20 Am. Neg. Rep. 121; 72 N. J. L. 530; *Phillips* v. *De Wald*, 79 Ga. 732; *Norris* v. *Kohler*, 41 N. Y. 42; *Pearl* v. *MacCauley*, 6 App. Div. 70; *Manthey* v. *Rauenbuehler*, 71 App. Div. 173; *Brand* v. *Borden's C. M. Co.*, 89 App. Div. 188.) There is nothing in the testimony which would give support to the contention that, under the circumstances, as matter of law, any duty was imposed upon deceased to have this horse and wagon driven away from the place where it was, in the absence of its driver; or to annex a chain, strap, rope or other thing to the horse or wagon in order to fasten them; or to leave his duties and stand and watch or hold the horse, or take one of his men from his duties for that purpose. (*Palmer* v. *Deering*, 93 N. Y. 7; *Bassett* v. *Fish*, 75 N. Y. 303; *Downey* v. *Low*, 22 App. Div. 460; *Mamzella* v. *Rochester R. Co.*, 195 N. Y. 514; *Manthey* v. *Rauenbuehler*, 71 App. Div. 174.)

*Carl Schurz Petrasch* and *William H. Griffin* for respondent. The contributory negligence of plaintiff's intestate appeared as a matter of law. His own negligence directly brought about his injury. (*Miller* v. *Union Ry. Co.*, 191 N. Y. 77; *Sann* v. *John Mfg. Co.*, 16 App. Div. 252; *Schneider* v. *S. A. R. R. Co.*, 133 N. Y. 583; *Aiken* v. *Penn. R. R. Co.*, 130 Penn. St. 380.) The record presents

no negligence whatever of defendant proximately causing this accident. ( *Unger* v. *F. S. S., etc., R. R. Co.,* 51 N. Y. 497.)

ANDREWS, J. The driver of the defendant left his horse alone and untied in a gangway leading directly to a much-used passenger platform of the Delaware, Lackawanna and Western Railroad Company under circumstances that would justify the jury in characterizing the act as negligent. Sometime later the horse, still untied, was discovered standing at one corner of this platform. The horse was restless. Starting forward he slipped and fell. The plaintiff's intestate was the general station master employed by the railroad company and had charge of the station. He was at work some distance away engaged in his own duties. Seeing the situation, he and a fellow-employee raised the horse, quieted him, stood him again in the corner and returned to their work, leaving the horse untied as before. A few minutes later, frightened by an incoming train, the horse started forward, plunged, reared and again fell. In attempting to relieve the horse and protect incoming passengers from possible danger, the deceased received fatal injuries.

In an action to recover damages for this death the complaint was dismissed by the trial court and the appeal resulted in an affirmance by the Appellate Division.

The court below did not reach this result upon the ground that there was no evidence of the negligence of the defendant's driver, or that the deceased was guilty of negligence, as a matter of law, because of his action at the time of the accident itself. It was placed upon the theory that the defendant's negligence, if any, was not the proximate cause of the death. That cause was " The act of deceased and his fellow-employee in leaving the horse unattended in the position where frightened or unmanageable he would cause injury to those upon

the premises.  *  *  *  If the employees of the railroad
company wished to take charge of this horse after he
had wandered from the place where he had first been
left by the driver, it was their duty to have led him away
and to have secured him in some place where he would
not be unattended and in a position to cause injury
to those having to do with the railroad company's
property."

There is involved in this statement the ideas that the
act of deceased was negligent as a matter of law, and
also that his act was the proximate cause of the injury.

We do not think that the act was necessarily negli-
gent. The deceased owed no duty to the defendant. His
duty was to use proper care to protect the passengers
of his employer and himself from injury. He had no
control over the horse except what was necessary for
that purpose. Why the horse was where he was, who
was its driver, when the driver would return, he did not
know. He had his own duties to perform. So did his
subordinates. Was it necessary for the safety of himself
and of passengers for him or for them to abandon those
duties and guard the horse? It was a question of judg-
ment. Nor did the fact that he raised the horse to its
feet make him liable as a matter of law for all that there-
after happened until he returned it to its master. That
act did not change his responsibility. He was still bound
to use reasonable care for his own safety. Whether he
had used such care was for the jury to determine. A
finding that he was free from negligence while the
defendant's servant was guilty in leaving the horse untied
would not be illogical. Their relations to the animal
were of a different order.

Nor do we think that the intervention of the deceased
prevents the original act of negligence being the proxi-
mate cause of the accident. We attempt no general
definition of these words. In the case before us the

question is whether the act of the defendant gave rise to the stream of events which culminated in the accident. Was the course of the stream deflected? Was it forced into new and unexpected channels by the act of a third person? And it should be noted that here it is immaterial whether the third person was the deceased or a stranger. It is said in Shearman & Redfield on the Law of Negligence, quoted with approval in *Laidlaw* v. *Sage* (158 N. Y. 73–99): " The proximate cause of an event must be understood to be that which, in a natural and continuous sequence, unbroken by any new cause, produces that event, and without which that event would not have occurred." Here, was there an unbroken connection between the wrongful act and injury? " Did the facts constitute a continuous succession of events, so linked together so as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury? * * * In the nature of things, there is in every transaction a succession of events, more or less dependent upon those preceding, and it is the province of the jury to look at this succession of events or facts, and ascertain whether they are naturally and probably connected with each other by a continuous sequence, or are dissevered by new and independent agencies." (*Milwaukee & St. P. Ry. Co.* v. *Kellogg*, 94 U. S. 469, 475.)

There is no such break as a matter of law in the causal connection in the case before us. Clearly the jury might find that the innocent act of the deceased in raising the horse to its feet did not cause such a break. What he did thereafter in leaving the horse untied was simply a failure to interfere with the sequence of events to which the defendant's act had given rise. As pointed out by the Appellate Division, this failure might have been found by the jury to be negligent in case passengers had been injured thereby. It might have rendered the railroad

company liable for that injury. It would not have relieved the defendant. So the jury might find that the deceased himself was guilty of contributory negligence. Its effect as a matter of law could extend no further.

The judgments appealed from, therefore, should be reversed and a new trial granted, with costs to abide event.

COLLIN, CARDOZO, POUND and CRANE, JJ., concur; CHASE and CUDDEBACK, JJ., dissent.

Judgments reversed, etc.